UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-62311-RUIZ/STRAUSS

**SEACOAST NATIONAL BANK,**

    Plaintiff,

v.

**M/Y VIAGGIO,** *HIN TW-VIS7375H809,*
*United States Flag Private Yacht*, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Verified Motion for Attorneys' Fees and Taxable Costs ("the Motion") [DE 51], filed on June 30, 2023. The Motion has been referred to me to take all action as required by law [DE 52]. I have reviewed the Motion and all attachments thereto, as well as the record in this case. No response to the Motion has been filed, and the time to file a response has passed (on July 14, 2023). For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 51] be **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

Plaintiff filed its Verified Complaint on December 9, 2022. [DE 1]. The Complaint alleged that on March 20, 2018, Defendant, JCF Yacht Charters, LLC ("JCF"), executed a Mortgage and Promissory Note in favor of Plaintiff covering the motor yacht Viaggio, Hull Identification Number TW-WIS7375H809, United States Flag Private Yacht, Official # 125815 ("the Vessel"). *Id.* at ¶10. JCF members, John Lizza, Carl Lizza, and Frank Lizza (each named as individual defendants in the Complaint) signed a "Commercial Guaranty" that guaranteed prompt payment

of principal, interest, and all other sums. *Id.* at ¶11. At the time of the Complaint, JCF owed an outstanding principal under the Mortgage of $868,187.88. *Id.* at ¶ 22. Thus, Plaintiff brought the action to foreclose the Vessel's Mortgage, arrest the Vessel, and sell the Vessel to satisfy the outstanding indebtedness. *Id.* at ¶ 15.

The Vessel was ultimately arrested on December 15, 2022, and, on March 28, 2023, a Clerk's entry of default was entered against Carl Lizza, Frank Lizza, and JCF.[1] *Id.* at ¶¶ 3, 7. The Clerk also entered Default against the Vessel. *Id.* at ¶ 9. On May 4, 2023, the Court granted Plaintiff's Motion for Final Default Judgment and entered Final Default Judgment against the Vessel, JCF, John Lizza, and Carl Lizza. *Id.* at ¶ 11.

In the Motion, Plaintiff seeks $47,760 in attorney's fees for the services of Chad Tamaroff and Aaron Williams. Specifically, Plaintiff seeks $32,160 for the services of Tamaroff, which consists of 53.6 hours at a rate of $600 per hour, and $15,600 for the services of Williams, which consists of 31.2 hours at a rate of $500 per hour. Plaintiff also seeks $5,649.82 in costs and $84,200.00 *custodia legis* expenses.

## ANALYSIS

I. **ATTORNEYS' FEES**

    A. **ENTITLEMENT**

"The prevailing party in an admiralty case is not entitled to recover its attorneys' fees as a matter of course." *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010) (quoting *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th

---

[1] Individual Defendant John Lizza was dismissed from the action because Plaintiff was unable to serve him with process. [DE 31].

Cir. 2001)).  However, there are exceptions to this general rule, including when "there is a contract providing for the indemnification of attorneys' fees." *Natco*, 267 F.3d at 1193.

I find that Plaintiff is entitled to attorney's fees under the Mortgage, Promissory Note, and each Commercial Guaranty.  Here, paragraph 23 of the Mortgage, signed by JCF, states the following:

> I agree to pay any late charges that become due under the Promissory Note, attorney fees, court costs, and any other expenses, losses, charges, or damages incurred or advances made by you the Mortgagee in the protection of it's [sic] rights or caused by Owner's default herein under or under the Promissory Note.

[DE 1-1 at 4].  The Promissory Note, signed by JCF (the borrower), states the following:

> Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

[DE 1-2 at 3].  Finally, each of the Commercial Guaranties states the following:

> Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty.  Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

[DE 1-3 at 3-4, 7-8, 12-13].  Accordingly, Plaintiff's entitlement to fees and costs is clear under the Mortgage, Promissory Note, and Commercial Guaranties.

### B. LEGAL STANDARD FOR DETERMINING REASONABLE ATTORNEYS' FEES

When determining the reasonableness of attorneys' fees, courts begin by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The result of that calculation is known as the lodestar, s*ee id.* at 1301-02, which is "strongly presumed to be reasonable." *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x 710, 715 (11th Cir. 2014) (quoting *Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993)).

The party seeking an award of fees has the burden of documenting the hours incurred and the applicable hourly rates. *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437). Fee applicants are required to exercise billing judgment and to exclude entries that are excessive, redundant, or otherwise unnecessary. *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citing *Hensley*, 461 U.S. at 434). Entries for clerical or administrative tasks should also be excluded. *See Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999))).

It is axiomatic that hours that are unreasonable to bill to one's client are unreasonable to bill to an adversary, "*irrespective of the skill, reputation or experience of counsel*." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). If fee applicants fail to exercise billing judgment, courts must do it for them. *Id.* A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an

independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Courts reviewing fee applications "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Consequently, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)).

### C.  REASONABLE HOURLY RATE

I find that $450 is a reasonable hourly rate for Mr. Tamaroff and $375 is a reasonable hourly rate for Mr. Williams. The Court may consider several factors in determining what constitutes a reasonable hourly rate. *See Johnson v. Ga. Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974). Because Plaintiff is seeking an award of attorneys' fees, it has the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Barnes*, 168 F.3d at 427 (quoting *Norman*, 836 F.2d at 1303). "A reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *Id.* at 436 (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Id.* at 437 (quoting *Cullens v. Ga. Dep't. of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994)).

Here, Plaintiff seeks approval of a $600 hourly rate for attorney Tamaroff, who is a partner at Greenspoon Marder and has twenty-four years of experience litigating cases in state and federal

5

court. Plaintiff also seeks approval of a $500 hourly rate for attorney Williams, who is also a partner at Greenspoon Marder and has eleven years of experience litigating cases in state and federal court. However, Plaintiff fails to provide sufficient evidence to justify these requested rates. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

In the Motion, Plaintiff's lone statement in support of Tamaroff and Williams's hourly rates is that the rates "are reasonable for each individual's experience and skill." [DE 51 at 5]. Williams's affidavit, which has been filed as an exhibit to the Motion, also avers that the hourly rates are "consistent with the prevailing market rates in the Southern District of Florida for similar work by attorneys with . . . similar backgrounds, experience, and expertise." [DE 51-2 at 2]. However, these statements fail to meet Plaintiff's burden to provide "specific and detailed evidence" to support its claimed hourly rate. *See Barnes*, 168 F.3d at 427. Other than the statement in Williams's affidavit, Plaintiff provides no evidence of whether Tamaroff and Williams's requested hourly rates are within the realm of hourly rates charged by other attorneys in Florida with the same amount of experience and qualification. For example, the Motion does not cite any examples of cases in which Tamaroff or Williams has been awarded their requested rates (or any other rates). Nor does the Motion cite to decisions awarding fees to other attorneys in similar matters or attorneys of similar experience.

By contrast, a review of recent fee awards for similar cases in this District and neighboring areas shows that a reduction of the requested rates is appropriate. In two recent maritime cases in this District resulting in default judgments, judges of this Court have rejected requested rates of

$500 per hour and $400 per hour for attorneys of comparable (or even more) experience than Tamaroff.  *See Desantis v. Atwood*, 20-CV-62004, 2022 WL 787973, at *3-4 (S.D. Fla. Mar. 2, 2022) (reducing hourly rate for an attorney with forty years of experience in maritime law from $450 to $375), *report and recommendation adopted*, *DeSantis v. Blackened Dolphin*, 2022 WL 783194 (S.D. Fla. Mar. 15, 2022); *Vice City Marina, LLC v. Philippians, LLC*, 20-23800-CIV, 2021 WL 1739294, at *4 (S.D. Fla. Mar. 18, 2021) (adjusting hourly rate for attorney with 20 years' experience from $500 to $400 because counsel provided "no cases where he received a higher rate in a maritime default judgment case like this"), *report and recommendation adopted*, 2021 WL 1739026 (S.D. Fla. May 3, 2021).  In *Vice City*, the Court similarly reduced the hourly rate for an attorney with experience comparable to Williams from $500 to $350.  *Vice City*, 2021 WL 1739294, at *4.  Other recent awards in maritime cases similarly suggest a prevailing rate below those requested by Plaintiff.  *See SHM Regatta Pointe, LLC v. M/Y Alley Cat*, 8:21-CV-1854-KKM-AEP, 2022 WL 18774820, at *3 (M.D. Fla. Oct. 28, 2022) (finding $350 hourly rate for a partner with thirty-two years of experience and a board-certification in maritime law reasonable); *Peninsula Petroleum Ltd. v. CI Int'l Fuels LLC*, 22-CV-20712, 2022 WL 2789954, at *4 (S.D. Fla. June 30, 2022) (concluding $430 hourly rate for a partner with twenty-eight years of experience and $300 hourly rate for a partner with fourteen years of litigation experience reasonable); *M&M Priv. Lending Grp., LLC v. M/Y Ciao Bella*, No. 19-CV-62350-SMITH, 2020 WL 5499102, at *3 (S.D. Fla. Sept. 3, 2020) (recommending $300 hourly rate for an attorney with more than 40 years of experience in action involving the arrest of a vessel upon a mortgage foreclosure), *report and recommendation adopted*, 2020 WL 5500734 (S.D. Fla. Sept. 11, 2020)).

Moreover, Plaintiff has not analyzed any of the other *Johnson* factors or explained why those factors or other reasons would justify a higher hourly rate for this case than those found

7

reasonable in similar maritime actions. Having independently considered the *Johnson* factors, I find the work performed in this case falls within the typical range of similar cases and do not find any reason why the work required in this specific case would justify a higher rate, particularly in light of the fact that the case resulted in a default judgment. *See Desantis*, 2022 WL 787973, at *3 (finding, in a default judgment maritime case: "the legal skills needed in this case fall within the usual realm of maritime law and arrest of a vessel and do not warrant a higher hourly rate of $450"). Accordingly, based on my consideration of Plaintiff's arguments, Plaintiff's attorneys' experience, skill, and qualifications (discussed above and in the Tamaroff and Williams declarations), Eleventh Circuit case law and case law in this district (including cases awarding fees in other maritime cases), and my own knowledge regarding reasonable hourly rates in this market, I find the following hourly rates to be reasonable: $450 for Tamaroff and $375 for Williams.

### D.  HOURS REASONABLY EXPENDED

Plaintiff's counsel's billing records reflect that Plaintiff's attorneys incurred a total of 84.8 hours in connection with this matter. This amount includes the 53.6 hours billed by Tamaroff and the 31.2 hours billed by Williams. In the Motion, counsel argues that all 84.8 hours were reasonably incurred. Having reviewed counsel's billing records, I find that counsel reasonably billed all 84.8 requested hours. Counsel's time records are sufficiently detailed to allow meaningful review, and most of the time requested seems necessary and reasonably expended. Given that there are no glaringly excessive billing entries, and the fact that there is no opposition to the Motion, I find that the hours expended do not warrant a reduction.

### E.  LODESTAR

For the reasons discussed above, I find that the hourly rate for Tamaroff is $450 and Williams is $375. I also find that Tamaroff and Williams reasonably expended 84.8 hours of work

on behalf of Plaintiff in this matter. Therefore, the lodestar figure for this matter is **$35,820** (53.6 x $450 + 31.2 x $375). I find that the lodestar represents a reasonable fee award here.

## II.   TAXABLE COSTS

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "[T]here is a strong presumption that the prevailing party will be awarded costs" under Rule 54. *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007)). While a trial court has some discretion in deciding whether to award costs, such discretion is not unlimited. *Id.* A decision to deny full costs must be supported by a sound reason. *Id.* (citing *Chapman v. AI Transp.*, 229 F. 3d 1012, 1039 (11th Cir. 2000)).

Nevertheless, the presumption favoring an award of costs generally applies to only those costs that are taxable under 28 U.S.C. § 1920. *Id.* (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987)). In other words, a court's discretion to award costs under Rule 54 is limited by the categories of taxable costs specified in § 1920. *Id.* (citing *Arcadian Fertilizer, L.P. v. MPW Indus. Servs. Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001)). Section 1920 specifically permits the taxation of the following costs:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Pursuant to the Motion, Plaintiff seeks an award of the following costs:

| Description | Amount |
|---|---|
| Fees of the Clerk | $402.00 |
| Service of Summons and Subpoena | $1,645.00 |
| Notice of Action in the Daily Business Review | $102.82 |
| U.S. Marshall Arrest of Vessel Fee | $3,500.00 |
| **Total** | **$5,649.82** |

Although the Motion is not opposed, "the Court has an independent duty to only award costs which are lawful and justified under federal law." *Richardson v. Fla. Drawbridges Inc.*, No. 21-CV-80803, 2022 WL 3370789, at *1 (S.D. Fla. Aug. 16, 2022). Therefore, I will evaluate the propriety of each of Plaintiff's requested costs, in turn.

First, as indicated above, § 1920(1) permits the taxing of "[f]ees of the clerk and marshal." Accordingly, the $402 filing fee Plaintiff paid is clearly taxable under § 1920(1) and should be awarded.

Second, fees for service of a summons or subpoena by private process servers are taxable under § 1920(1). *See* 28 U.S.C. § 1921; *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623-24 (11th Cir. 2000). However, the service fee charged by a private process server may not exceed the amount charged by the U.S. Marshal. *See W&O*, 213 F.3d at 624. The Marshal charges $65 per hour for each item served (plus travel costs and any other out-of-pocket expenses). 28 C.F.R. § 0.114(a)(3). Here, Plaintiff requested $1,645 for "service of the summons and subpoena." [DE 51-5 at 1]. I recommend awarding Plaintiff $275 of that amount.

10

Plaintiff's requested $1,645 consists of $143 to serve Defendant Carl Lizza, $148 to serve Defendant Frank Lizza, $333 to serve the corporate officer of JCF, and $1,021 to serve John Lizza. *Id.* at 5-8. The invoice for service of Carl Lizza's subpoena lists a gas surcharge of $3 and a "nationwide service" charge of $140. *Id.* at 5. While Plaintiff should be awarded the $3 gas surcharge as a travel expense, they should not be awarded the full amount requested for nationwide service because they have not provided information or documents sufficient to show that a charge above $65 for "nationwide service" on this defendant (or any defendant) is appropriate. Thus, I recommend awarding Plaintiff $68 in connection with the service of Carl Lizza's subpoena.

The invoice for service of Frank Lizza's subpoena lists a gas surcharge of $3, printing charge of $5, and nationwide service charge of $140. *Id.* at 6. Plaintiff should be awarded the $3 gas surcharge but not the $5 printing charge because it is not an out-of-pocket expense. *See Vista Clinical Diagnostics, LLC v. Markovic*, No. 617CV1491ORL41TBS, 2018 WL 4760821, at *2 (M.D. Fla. Aug. 7, 2018), *report and recommendation adopted*, 2019 WL 1383514 (M.D. Fla. Mar. 27, 2019) (declining to award $0.15 per page printing charge). Additionally, it is only appropriate to award $65 for nationwide service. Thus, I recommend awarding Plaintiff $68 in connection with the service of Frank Lizza's subpoena.

The invoice for service of JCF's subpoena lists a $40 Dade service fee, $9 gas surcharge, $4 printing charge, $140 nationwide service charge, and $140 additional address fee. [DE 51-5 at 7]. The Court should award Plaintiff the $9 gas surcharge as a travel cost pursuant to 28 C.F.R. § 0.114(a)(3). The $4 printing charge and $40 Dade service fee, however, are not recoverable as the printing fee is not an out-of-pocket expense, *see Vista*, 2018 WL 4760821, at *2, and the invoice does not adequately explain why there is an additional surcharge for service in Miami-Dade County, *see United States Equal Emp. Opportunity Comm'n v. Favorite Farms, Inc.*, No. 8:17-

11

CV-1292-T-30AAS, 2019 WL 2255663, at *1 (M.D. Fla. Apr. 15, 2019). Again, I only recommend awarding Plaintiff $65 for their nationwide service charge and $65 for their additional address charge. Thus, I recommend awarding Plaintiff $139 in connection with the service of JCF's subpoena.

The final invoice for service of John Lizza's subpoena lists a $40 Dade service fee, $21 gas surcharge, $840 nationwide charge (comprised of six $140 charges), $75 "search for new address" fee, and $45 printing charge. *Id.* at 8. The Court should not award Plaintiff any of the requested costs for the attempted service of John Lizza. The cost of the service of process upon dismissed defendants is not recoverable. *See Santos v. Taste 1 Grp., LLC*, No. 3:14-CV-383-J-34JBT, 2015 WL 13792370, at *3 (M.D. Fla. Nov. 16, 2015); *Ramos v. Davis & Geck, Inc.*, 968 F. Supp. 765, 781 (D.P.R 1997). Thus, I do not recommend awarding Plaintiff any costs in connection with John Lizza's subpoena.

Third, Plaintiff requests $102.82 for "Notice of Action [in the] Daily Business Review." *Id.* at 3, 10. Plaintiff lists this as "other costs" in its bill of costs. *Id.* at 1-2. Local Admiralty Rule E(12) states that "[i]n an action in rem or quasi in rem . . . the Marshal shall publish notice in any of the newspapers approved pursuant to Local Admiralty Rule A(7)." Local Admiralty Rule A(7) states that "an approved newspaper shall be a newspaper of general circulation." The Daily Business Review is a newspaper of "general circulation" and thus it is approved pursuant to Local Admiralty Rule A(7). *See* S.D. Fla. L.R. 5.2(c) (stating that The Daily Business Review is a "newspaper of general circulation"). Additionally, 28 U.S.C. § 1921(a)(1)(D) states that the Marshals "shall routinely collect, and a court may tax as costs, fees for . . . the preparation of any notice of sale, proclamation in admiralty, or other public notice or bill of sale." Therefore, I recommend that Plaintiff be awarded the $102.82 for costs relating to the notice of action it filed

in the Daily Business Review. *See Wachovia Bank, Nat. Ass'n v. M/Y MAYBE TOMORROW*, 09-60547-CIV, 2011 WL 1196919, at *4 (S.D. Fla. Jan. 4, 2011) (awarding costs associated with a notice of filing in the Daily Business Review), *report and recommendation*, 2011 WL 1157339 (S.D. Fla. Mar. 29, 2011).

Fourth, and finally, Plaintiff requests $3,500 for the U.S. Marshal's arrest of the Vessel. [DE 51-5 at 3]. Plaintiff also listed this fee as "other costs" in its bill of costs. *Id.* Under 28 U.S.C. § 1921(2), the U.S. Marshal, "shall collect, in advance, a deposit to cover the initial expenses for special services required under paragraph (1)(E), and periodically thereafter such amounts as may be necessary to pay such expenses until the litigation is concluded." The special services required under paragraph (1)(E) include "the keeping of attached property (including boats, vessels, or other property attached or libeled)." As such, the fees for the arrest of the Vessel in this case are clearly compensable under 28 U.S.C. § 1920(1) as fees of the U.S. Marshal. Accordingly, I recommend that Plaintiff be awarded the requested $3,500 related to the Marshal's arrest of the Vessel.

### III.   CUSTODIA LEGIS EXPENSES

Plaintiff also seeks $84,200 in *custodia legis* expenses to cover the expenses it incurred regarding the substitute custodian, National Liquidators. [DE 51-4]. *Custodia legis* expenses are "the expenses incurred in operating and caring for a vessel while in the custody of a court." *M&M Private Lending Group*, 2020 WL 5499102 at *1. They are considered "expenses of justice" that are reimbursed from the proceeds of the sale of an arrested vessel and are entitled to priority over all lien claims "when the dictates of equity and good conscience so require." *Dresdner Bank AG v. M/V OLYMPIA VOYAGER,* 465 F.3d 1267, 1272 (11th Cir. 2006); *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561 (11th Cir. 1987). Because the expenses are reasonable and Plaintiff appointed National Liquidators as the substitute custodian after the Vessel

13

was arrested, equity and good conscience require awarding Plaintiff the requested expenses. Thus, I recommend awarding Plaintiff the $84,200 it seeks in *custodia legis* expenses.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 51] be **GRANTED-IN-PART and DENIED-IN-PART** and that the District Court award Plaintiff attorneys' fees in the amount of **$35,820,** taxable costs in the amount of **$4,279.82**, and *custodia legis* expenses in the amount of **$84,200** for a total award of **$124,299.82**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 2nd day of October 2023.

Jared M. Strauss
United States Magistrate Judge